**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

_____

INDEPENDENT ROUGH TERRAIN     )
CENTER, LLC,     )
    )
             Plaintiff,     )
    )
             v.     )     No. 24-160
    )
THE UNITED STATES,     )     Filed: July 1, 2024
    )
             Defendant,     )     Re-issued: July 16, 2024[*]
    )
and     )
    )
TAYLOR DEFENSE PRODUCTS, LLC,     )
    )
             Defendant-Intervenor. )
_____ )

**OPINION AND ORDER**

In this pre-award bid protest, Plaintiff Independent Rough Terrain Center, LLC ("IRTC") challenges the scope of the corrective action taken by the United States Army Materiel Command ("AMC") in relation to a follow-on production contract solicitation for Rough Terrain Container Handler ("RTCH") Modernization. Before the Court are motions to dismiss for lack of jurisdiction or, in the alternative, failure to state a claim filed by the Government and Defendant-Intervenor, Taylor Defense Products, LLC ("Taylor"). The Government and Taylor contend that the Court does not have jurisdiction over a bid protest related to a follow-on production contract solicitation issued under the Army's Other Transaction ("OT") authority. They also allege that, even if the Court does have jurisdiction, IRTC lacks standing because it violated a mandatory eligibility

_____

[*] The Court issued this opinion under seal on July 1, 2024, and directed the parties to file any proposed redactions by July 12, 2024. As the parties do not propose any redactions, the Court reissues the opinion publicly in full.

provision of the solicitation by allowing its System for Award Management ("SAM") registration to lapse after submitting its proposal to AMC.  For the reasons outlined below, the Court **DENIES IN PART** and **GRANTS IN PART** the Motions to Dismiss.

## I.   BACKGROUND

### A.   Factual Background

On December 16, 2022, AMC issued a Request for Proposals (W56HZV-21-R-0157) ("Solicitation") for the modernization of its RTCH vehicles, which the Army primarily uses to lift and move shipping containers.  Pl.'s Compl. ¶¶ 1, 5, 26, ECF No. 1.[1]  The RTCH Modernization program proposal was to include an in-factory Service Life Extension Program ("SLEP") and RTCH Modernization in the Field Kit.  *Id.* ¶¶ 6–8.  Pursuant to 10 U.S.C. §§ 4021 and 4022, AMC issued the Solicitation under the Army's OT authority as a follow-on production contract after an earlier, completed OT prototype solicitation.  *Id.* ¶ 2.  Specifically, the Solicitation stated that "[t]he selection process will be executed under the authority of 10 U.S. Code 4022 as provided in the [OT prototype solicitation]; any reference to the Federal Acquisition Regulation (FAR) is for the resulting contract execution only."  Pl.'s Compl., Ex. 9 at 111, ECF No. 1-1.  During the initial prototype phase, both IRTC and Taylor, the only two participants, submitted prototypes of modernized RTCH vehicles.  ECF No. 1 ¶¶ 3–4; ECF No. 1-1 at 111.  Because AMC deemed their prototypes successful, AMC limited its selection process for the follow-on production phase at issue here to IRTC and Taylor.  ECF No. 1 ¶ 2; *see* 10 U.S.C. § 4022(f)(2).

The Solicitation's terms included mandatory eligibility requirements for each offeror, including the incorporation of the FAR's SAM registration requirement:

---

[1] Plaintiff's Complaint contains non-consecutive numbering.  Unless otherwise noted, the citations to the Complaint refer to the paragraphs in §§ V–IX.

Section M.1.4, Eligibility for Award: Award will only be made to an offeror who
is eligible for award.  To be eligible for award: a. The offeror must be determined
responsible [in accordance with] Section M.4; b. The proposal must not contain any
Deficiencies . . . ; c. The offeror must be registered in the System for Award
Management (SAM) [in accordance with] FAR 52.204-7.

ECF No. 1-1 at 292–93.  FAR 52.204-7 provides that: "An Offeror is required to be registered in

SAM when submitting an offer or quotation, and shall continue to be registered until time of award

. . . ."[2]  FAR 52.204-7(b)(1).  IRTC had an active SAM registration at the time it submitted its

proposal.  Def.'s Mot. to Dismiss, Ex. A at 5–6, ECF No. 26-1; Def.'s Mot. to Dismiss at 7, ECF

No. 26.[3]

On September 20, 2023, AMC awarded the follow-on production contract to Taylor.  ECF

No. 1 ¶ 32.  IRTC filed an agency-level protest of the award on September 29, 2023, based on

information provided in AMC's debriefing, and later filed an updated protest on October 25, 2023,

after IRTC viewed Taylor's prototype.  *Id.* ¶¶ 38, 46.  AMC dismissed IRTC's agency-level protest

on January 22, 2024, when AMC announced it would take corrective action.  *Id.* ¶ 47.  AMC's

corrective action provided the parties the opportunity to submit by February 1, 2024, revised

Experience proposals under amended evaluation criteria.  *Id.* ¶¶ 47, 49–50.

Presumably in response to the present protest, the Government reviewed IRTC's SAM

registration records and discovered a lapse in IRTC's registration from May 26, 2023, to August

9, 2023.  ECF No. 26-1 at 2–3; ECF No. 26 at 7; *see also* Def.-Intervenor's Mot. to Dismiss, Ex.

---

[2] SAM is an official website of the U.S. Government where vendors register to do business
with the U.S. Government and may access information including Assistance Listings, Wage
Determinations, Contract Opportunities, and Contract Data Reports.  System for Award
Management, https://sam.gov/content/home (last visited June 28, 2024).

[3] IRTC submitted its initial proposal for the follow-on production contract on February 1,
2023.  ECF No. 1 ¶ 26.  After AMC amended the Solicitation to remove a supporting
documentation requirement, IRTC re-submitted its proposal on February 24, 2023.  *Id.* ¶¶ 27, 30.

2 at 1–3, ECF No. 27-2; Def.-Intervenor's Mot. to Dismiss at 13, ECF No. 27. The Government

provided documentation of this lapse to IRTC's counsel and Taylor's counsel on or about February

9, 2024. ECF No. 27 at 13 n.6.

### B.   Procedural Background

On January 31, 2024, IRTC filed this pre-award protest with the Court alleging four counts:

(1) Defendant's announced corrective action scope unduly restricts IRTC's ability to amend its price proposal in response to updated RFP evaluation criteria guidance.

(2) Defendant has undermined fair and equal competition by failing to implement curative measures during corrective action to address the fact that offerors were assigned different versions of RTCHs in materially different conditions as the basis upon which to establish SLEP unit pricing.

(3) Defendant unlawfully permitted Taylor to participate in the follow-on RTCH Modernization P-OTA production competition without first establishing Taylor provided a successfully modernized RTCH prototype, in violation of 10 U.S.C. § 4022.

(4) Defendant's proposed corrective action fails to include steps to evaluate Taylor's follow-on production contract proposal for deficiencies beyond the experience proposal.

ECF No. 1 at 30, 34, 40, 48. The Court held an initial status conference on February 7, 2024. *See*

Minute Entry (Feb. 7, 2024). At the conference, the parties agreed to brief the Government's and

Taylor's Motions to Dismiss, addressing threshold issues of jurisdiction and standing, before

briefing dispositive motions on the merits. *See* Scheduling Order, ECF No. 14. On March 29,

2024, the Court held oral argument on the Motions to Dismiss. *See* Minute Entry (Apr. 5, 2024).

These motions are now ready for decision.

## II.   LEGAL STANDARD

### A.    Dismissal for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

Before reaching the merits of a plaintiff's action, the Court must as a threshold matter assure itself that subject-matter jurisdiction exists.  *See* RCFC 12(b)(1), (h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield v. Swan*, 111 U.S. 379, 382 (1884))).  The plaintiff bears the burden of establishing by the preponderance of evidence the Court's jurisdiction over its claim.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

When deciding whether to dismiss a complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, the Court must accept all factual allegations as true and draw all reasonable inferences in the claimant's favor.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, if a complaint contains challenged factual allegations, for purposes of ruling on a motion to dismiss, the court may inquire into facts necessary to support jurisdiction and may resolve disputed facts.  *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (affirming that a court may consider "evidentiary matters outside the pleadings" when assessing a Rule 12(b)(1) dismissal).  If the Court determines that the plaintiff has failed to meet its burden to establish the Court's jurisdiction over its claims, it must dismiss the case.  *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### B.    Dismissal for Failure to State a Claim Upon Which Relief May Be Granted Under Rule 12(b)(6)

The Court must also dismiss an action if it fails to state a claim for which relief may be granted.  RCFC 12(b)(6).  To avoid dismissal under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Although a complaint need not contain detailed factual allegations to raise a plausible

claim, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see Papasan v. Allain*, 478

U.S. 265, 286 (1986) (holding that courts "are not bound to accept as true a legal conclusion

couched as a factual allegation").  In deciding a motion under RCFC 12(b)(6), the Court may

consider the complaint itself, "the written instruments attached to it as exhibits, 'documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice.'"  *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010) (quoting *Tellabs, Inc.

v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007)), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011).  The

Court must draw all reasonable inferences in favor of the non-moving party.  *Sommers Oil Co. v.

United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

### C.    Standing in a Bid Protest

The Tucker Act, as amended by the Administrative Dispute Resolution Act ("ADRA") of

1996, provides the Court of Federal Claims with "jurisdiction to render judgment on an action by

an interested party objecting to . . . the award of a contract or any alleged violation of statute or

regulation in connection with a procurement[.]"  28 U.S.C. § 1491(b)(1).  To establish standing in

a bid protest, the plaintiff is required to demonstrate that it is an interested party, meaning it "is an

actual or prospective bidder[ ] and . . . possesses the requisite direct economic interest."  *Rex Serv.

Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  To show a "direct economic

interest," a plaintiff typically must show that it was prejudiced by the Government's alleged errors

by proving it had a "substantial chance" of receiving the contract.  *Myers Investigative & Sec.*

*Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002).  Put differently, a plaintiff has standing to pursue a bid protest if it demonstrates that "but for the error[s]" challenged in the protest it "would have had a substantial chance of securing" the contract at issue.  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009); *see Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

In the pre-award context, such as a challenge to a corrective action, a protestor may establish its direct economic interest by demonstrating "a non-trivial competitive injury which can be addressed by judicial relief."  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1363 (Fed. Cir. 2009); *see Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).  However, the United States Court of Appeals for the Federal Circuit has held that the "traditional 'substantial chance'" standard is still properly applied where there is an "adequate factual predicate to ascertain under [that standard]" whether the protestor was prejudiced by the challenged agency action.  *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013) (holding that standing to challenge Army's pre-award decision to exclude protestor's proposal from competition was subject to "substantial chance" standard).

In *CACI, Inc.-Federal v. United States*, the Federal Circuit held that § 1491(b)(1)'s interested party requirement presents a question of statutory standing that does not implicate this Court's subject-matter jurisdiction.  67 F.4th 1145, 1151 (Fed. Cir. 2023).  According to *CACI*, the Court may choose—but is not required—to make an initial, "preliminary determination ('substantial chance') with respect to the plaintiff's chances of securing the contract" before addressing the merits of the protest.  *Id.* at 1152.  As the Court further observed, the statutory standing issue and the merits issue may be overlapping, especially where the plaintiff's protest

challenges the agency's evaluation of its own bid. *Id.* at 1152–53 (citing *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012)).

## III. DISCUSSION

This Court has jurisdiction over IRTC's protest, regardless of the Army's use of OT authority, because the follow-on production contract at issue meets the broad definition of a procurement. However, IRTC lacks standing, and thus its protest must be dismissed, because it is ineligible for award due to the lapse in its SAM registration.

### A.   The Court Has Jurisdiction Over a Protest of a Solicitation for a Follow-On Production Contract Issued Under the OT Authority Provided in 10 U.S.C. § 4022(f)(5).

With respect to the first issue, the central question before the Court is whether a follow-on production contract issued under the Army's statutory OT authority, rather than under the FAR, is a procurement for purposes of the Court's bid protest jurisdiction. This is a matter of first impression in this Court. The Government and Taylor argue that the Court lacks jurisdiction over IRTC's protest because "it is well established that transactions executed under an agency's OT authority are not procurements," and the Court's bid protest jurisdiction pertains exclusively to procurements. ECF No. 26 at 15 (citing *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016)); ECF No. 27 at 20–21. The plain language of the OT statute, according to the Government, both defines OT authority as something that is "other than" a procurement contract subject to the FAR and demonstrates Congress's intent to remove OTs from this Court's bid protest jurisdiction. Def.'s Reply at 9–10, ECF No. 30. Finding that an OT follow-on contract is a procurement, the Government argues, "would ignore the plain text of the [OT] statute." *Id.* at 10.

In response, IRTC argues that irrespective of the statutory authority used, the Government intends to acquire goods and services via the follow-on production contract contemplated by the

Solicitation, making this a "procurement" under the Federal Circuit's precedent and subject to the Court's broad grant of jurisdiction over bid protests.  Pl.'s Opp'n at 15–16, ECF No. 28.  In the alternative, IRTC argues that the follow-on production contract is sufficiently "in connection with" a procurement—giving the Court jurisdiction—because the Solicitation contemplates the issuance of additional delivery orders to the contract awardee.  *Id.* at 18–19.  On the question of jurisdiction, IRTC prevails.

There is a strong but rebuttable presumption of judicial review of agency action.  *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015) (citing *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)).  The presumption is overcome "when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct."  *Id.* (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349, 351 (1984)).  The OT statutory provisions at play here do not contain language expressly precluding judicial review.  *See* 10 U.S.C. §§ 4021–4022.  Similarly, the legislative history of these provisions does not reveal congressional intent to preclude judicial review.  *See generally* Heidi Peters, Cong. Rsch. Serv., R45521, Department of Defense Use of Other Transaction Authority Appendix A: Legislative History (2019).

Specifically, 10 U.S.C. § 4021 permits the Secretary of Defense and the Secretary of each military department to "enter into transactions (other than contracts, cooperative agreements, and grants) under the authority of this subsection in carrying out basic, applied, and advanced research projects."  10 U.S.C. § 4021(a).  Congress intended this section to provide the military with additional authority to carry out such projects as an alternative to using the typical legal instruments provided for in 31 U.S.C. §§ 6303–6305.[4]  *Id.*; *see id.* § 4001(b).  OT agreements are

---

[4] Sections 6303 through 6305 "prescribe criteria for executive agencies in selecting appropriate legal instruments"—*i.e.*, contracts, cooperative agreements, or grants—for procurement or assistance activities.  31 U.S.C. § 6301(2).

thus by law not subject to the federal laws and regulations applicable to procurement contracts. *Id.* § 4021(a); *see* 32 C.F.R. § 3.2.

Under the same authority, the Department of Defense also may carry out certain prototype projects, as was the case here.  10 U.S.C. § 4022(a).  Following the completion of an OT prototype agreement under § 4022(a), the statute provides for an optional "follow-on production" phase where the military may award a contract to a prototype phase participant for the production or supply of goods or services.  *Id.* § 4022(f)(1).  The military may use the same OT authority used in the prototype phase or it may use FAR authority to award follow-on production contracts.  *Id.* § 4022(f)(5); *see* Dep't of Def., Other Transactions Guide 44 (2023) ("[Section] 4022(f) authorizes follow-on efforts to a Prototype OT agreement without further competition.  That follow-on production effort may be structured with the same flexibilities as the original OT, or it may be FAR-based.").

As shown in the legislative history, Congress granted the military OT authority under 10 U.S.C. §§ 4021–4022 to provide a more flexible method to facilitate research, development, and prototyping than via traditional procurement contracts.  *See* S. Rep. No. 106-292, at 324 (2000) ("[I]t is imperative that the Department continue to have the flexibility to use innovative contractual instruments that provide access to [commercial] technology.").  The flexibility of OT agreements derives from them not being subject to the federal statutes and regulations applicable to other types of agreements, including the FAR.  *See* 32 C.F.R. § 3.2.  This flexibility potentially allows for a faster acquisition process, thereby attracting companies to do business with the Defense Department when they otherwise might forego opportunities due to bureaucratic obstacles.  Peters, Cong. Rsch. Serv., 7.  Indeed, Congress viewed OT authority as providing "an important acquisition tool" for the military to help "facilitate the incorporation of commercial

technology" into its programs.  S. Rep. No. 106-292, at 324; *see also* Peters, Cong. Rsch. Serv., 32 (Congress believed that "OTs could support [the military's] effort to access new sources of technological innovation . . . .").

The Government argues that the plain language of 10 U.S.C. §§ 4021 and 4022 establishes that OTs (both prototype OTs and follow-on production OTs) are not procurements.  ECF No. 30 at 7.  It is true that the statute defines OTs by what they are *not*, specifically something "other than contracts, cooperative agreements, and grants" in accordance with 31 U.S.C. §§ 6303–6305.  10 U.S.C. § 4021(a); *see also id.* § 4001(b).  It is also true that OTs are not automatically governed by the FAR and its supplements.  *See* 32 C.F.R. § 3.2.  But although most government procurement contracts fall under the authority of the FAR, the Court's bid protest jurisdiction is not limited to only FAR-based contracts.  *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 n.7, 1084 (Fed. Cir. 2001) (concluding that the Court of Federal Claims has bid protest jurisdiction over United States Postal Service procurements, notwithstanding that the Postal Service is exempt from the FAR).  Nor is the Court's bid protest jurisdiction limited to procurement contracts under 31 U.S.C. § 6303.  *See id.* at 1080 ("[I]t is clear that the Court of Federal Claims is the only judicial forum to bring *any* governmental contract procurement protest.") (emphasis added)); *see also 360Training.com, Inc. v. United States*, 104 Fed. Cl. 575, 587 (2012) ("[T]he descriptions of procurement contracts and cooperative agreements contained in 31 U.S.C. § 6303 and § 6305 do not narrow the definition of procurement in the Tucker Act or 41 U.S.C. § 111.").

Instead, the Federal Circuit has held that the Court's jurisdiction over "objections to the procurement process" is "broad."  *Sys. Application & Techs.*, 691 F.3d at 1381 ("[A] narrow application of section 1491(b)(1) does not comport with the statute's broad grant of jurisdiction . . . .").  Since the Tucker Act does not define the term "procurement," the Federal Circuit has

adopted the definition of that term in 41 U.S.C. § 111—not 31 U.S.C. § 6303 or the FAR—for the purpose of delineating this Court's jurisdiction. *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008). Pursuant to 41 U.S.C. § 111, a "'procurement' includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." The Federal Circuit has also held that where another statutory provision is relevant to the Court's inquiry it should not rely solely on § 111's definition when determining whether it can review a protested action. *See Hymas*, 810 F.3d at 1326. In *Hymas*, the question was whether a protest of the award of cooperative farming agreements fell within the Court of Federal Claims' jurisdiction as procurement contracts. *Id.* at 1327. The procuring agency construed the arrangements as cooperative agreements, not procurements, and the Federal Circuit agreed based on its application of the criteria set forth in 31 U.S.C. § 6305. *Id.* at 1327–28 (finding that the farming agreements were intended to transfer a thing of value (*i.e.*, the right to farm certain federal land and keep a share of the crop) to carry out a public purpose authorized by law, and that the agency remained significantly involved).

Here, that the statutory OT provisions describe OT agreements as something other than a procurement contract (or cooperative agreement or grant) does not mean the statute is describing OT agreements as something other than a procurement as defined by 41 U.S.C. § 111. *See Hydraulics Int'l, Inc. v. United States*, 161 Fed. Cl. 167, 178 (2022) ("OTA's exemption from the FAR does not necessitate exemption from the Tucker Act."). *Hymas* did not hold as much, nor has the Government persuasively argued that *Hymas*'s holding should be extended in such way. Rather, the relevant inquiry requires the Court to look at what the Government is seeking through the solicitation of proposals. In the context of the OT follow-on production phase, the purpose of

the Solicitation at issue is to acquire for the benefit of the Army the goods and services proposed by IRTC or Taylor as part of the RTCH Modernization prototype phase.  *See* ECF No. 1 ¶¶ 14–16; ECF No. 1-1 at 111.  AMC is choosing to conduct this acquisition under its OT authority, as the statutory OT provisions permit.  ECF No. 1-1 at 111 ("The selection process will be executed under the authority of 10 U.S. Code 4022 . . . .").  But AMC's choice of a follow-on production under § 4022(f)(5) is not between a non-procurement (*i.e.*, under OT authority) or a procurement (*i.e.*, under FAR authority), it is between two different authorities for "acquiring property or services."  41 U.S.C. § 111; *see* S. Rep. No. 106-292, at 324.

In this way, a solicitation for a follow-on production contract is materially distinguishable from a solicitation issued during the OT prototype phase.  As such, the Government and Taylor stretch the holding in *Space Exploration Technologies Corporation v. United States* ("*SpaceX*"), 144 Fed. Cl. 433 (2019), too far.  *See* ECF No. 26 at 15; ECF No. 27 at 19–20.  In *SpaceX*, the court found that the prototype OT at issue (the Launch Service Agreement ("LSA")) was not a procurement and was not "in connection with" any future follow-on procurement.  144 Fed. Cl. at 442–45.  To reach this conclusion, the Court analyzed features of each phase's solicitation, and found that the prototype phase and the follow-on phase "involve[d] separate and distinct solicitations" employing different acquisition strategies.  *Id.* at 443.  Notably, the proposed follow-on solicitation included a "full and open competition" to award a FAR-based contract that was not limited only to prototype participants.  *Id.* at 443–44.  In addition, the goals of the prototype and follow-on phases differed, with the prototype having the goal of investing in industry development, and the follow-on having the goal of procuring the agency's required services.  *Id.* at 444.  The court also found significant that the LSA prototype OT itself was not a procurement because it "did not involve the procurement of any goods or services" by the agency.  *Id.*  As it explained:

13

> [T]he administrative record makes clear that the LSA Competition did not involve the procurement of any goods or services by the Air Force . . . .   While it is undisputed that the Air Force will provide funding to develop launch service prototype vehicles under the LSAs, the Air Force will not purchase or own these prototypes . . . .   Nor will the Air Force acquire any services under the LSA.   And so, unlike the Phase 2 Procurement, the LSA Competition did not involve an acquisition of goods or services.

*Id.* at 444.   Ultimately, *SpaceX* held that the proposed FAR-based follow-on production contract, in and of itself, was not enough to satisfy the "in connection with a procurement" requirement to invoke this Court's jurisdiction over a protest related to the prototype OT.  *Id.* at 442–44.

In relying upon *SpaceX*, the Government implies that *all* transactions executed under OT authority are not procurements.   ECF No. 26 at 15–16.   This reliance is misplaced, however, because *SpaceX* limited its holding to the LSA (the prototype phase OT) and did not reach the question of whether a follow-on production contract issued under OT authority is *also* not a procurement.  *See SpaceX*, 144 Fed. Cl. at 442 n.4.

As IRTC highlights, there are other decisions addressing OT agreements that are more relevant to the instant motions, even though the cases did not arise as protests to a solicitation for a follow-on production contract.  *See* ECF No. 28 at 13–14.   These decisions similarly examined whether a follow-on production contract (or the potential for a follow-on production contract) under 10 U.S.C. § 4022(f) provided a sufficient "connection with a procurement" to satisfy the Court's jurisdiction over a protest related to the OT prototype phase.  *See MD Helicopters Inc. v. United States*, 435 F. Supp. 3d 1003, 1013 (D. Ariz. 2020); *Hydraulics Int'l*, 161 Fed. Cl. at 172; *Kinemetrics, Inc. v. United States*, 155 Fed. Cl. 777, 785 (2021).   In each case, the court held that the Court of Federal Claims had jurisdiction because the OT prototype solicitation because it initiated an acquisition process that led to, or at least contemplated, the eventual award of a follow-on production contract.  *See MD Helicopters*, 435 F. Supp. 3d at 1013 (finding that the purpose of

14

the prototype phase was to support acquisition decision-making, involved down-selecting participants, and contemplated possibly awarding a "follow-on production contract or transaction *without the use of competitive procedures*" to a successful participant (emphasis in original)); *Hydraulics Int'l*, 161 Fed. Cl. at 179 (finding that the prototype OT "'initiated "the process for determining a need" for acquisition'" and could "result in the exclusion of plaintiff for consideration of 'a follow-on production contract'" (internal citations omitted); *Kinemetrics*, 155 Fed. Cl. at 785 (finding that part of an OT solicitation called for a technical and cost proposal to be evaluated for award of an IDIQ contract for certain equipment). If, as the Government argues, all solicitations issued pursuant to OT authority are not procurements, and thus beyond the Court's jurisdiction, then the "in connection with a procurement" analysis conducted by the courts in these cases would have been unnecessary. Instead, what made the protests subject to the Court's jurisdiction was the procurement nature of the follow-on production contract itself.

In sum, the Solicitation here concerns an OT follow-on production contract for goods and services, and nothing in the OT statutes expressly removes OT follow-on contracts from the purview of this Court's jurisdiction. The Court holds that it has jurisdiction to review a follow-on production contract that seeks to acquire property or services for the Government, whether the agency issued the follow-on solicitation under OT authority or under FAR authority. Accordingly, the Court denies the Government's and Taylor's Motions to Dismiss on Rule 12(b)(1) grounds because the Court finds it has subject-matter jurisdiction over the protest.

### B.    IRTC Does Not Have Standing Because It Is Ineligible for Award Due to a Lapse in SAM Registration.

Having found subject-matter jurisdiction over this matter, the Court next addresses the question of IRTC's standing to bring this protest. The Government and Taylor allege that the lapse in IRTC's SAM registration between the submission of its offer and the award of the contract to

Taylor violated the clear language of both the Solicitation and the FAR.  ECF No. 26 at 11; ECF No. 27 at 15.  That violation results in IRTC's ineligibility for award, the Government and Taylor argue, and deprives IRTC of standing to protest the award.  ECF No. 26 at 8, 11; ECF No. 27 at 8. The Court agrees.

Here, the question of IRTC's eligibility for award presents a sufficient factual predicate to ascertain under the "substantial chance" standard whether it was harmed by AMC's corrective action.[5]  *Orion Tech.*, 704 F.3d at 1349.  If IRTC is an ineligible bidder, it does not have a substantial chance of receiving the award and thus does not have standing to pursue this protest. *Asset Prot. & Sec. Servs., L.P. v. United States*, 5 F.4th 1361, 1366 (Fed. Cir. 2021); *CS-360, LLC v. United States*, 94 Fed. Cl. 488, 500 (2010) (holding protestor did not demonstrate standing to bring pre-award protest where it was ineligible to participate in the procurement).

That conclusion is supported here by the express language of the Solicitation itself, which mandates that an "[a]ward will only be made to an offeror who is eligible for award."  ECF No. 1-1 at 292.  As one of the mandatory eligibility requirements, the Solicitation requires offerors to

---

[5] The Court does not view the Government's argument as raising a separate issue of Article III standing.  *See* ECF No. 26 at 10 (raising standing argument as a question of Article III standing, contending that "[w]ithout any possibility of receiving the contract award itself, IRTC has not suffered any injury in fact"); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The Federal Circuit has explained that the typical "standing issue . . . [for a bid protest] presents a question of statutory standing rather than Article III standing."  *B.H. Aircraft Co. Inc. v. United States*, 89 F.4th 1360, 1363 (Fed. Cir. 2024) (alteration in original) (quoting *CACI*, 67 F.4th at 1151).  Indeed, the "interested party" requirement under § 1491(b)(1) "imposes more stringent standing requirements than Article III."  *Weeks Marine*, 575 F.3d at 1359.  That is not to say that an Article III standing issue can never arise in a bid protest case, *see Acetris Health, LLC v. United States*, 949 F.3d 719, 727 (Fed. Cir. 2020) (addressing question of mootness under rubric of constitutional standing), but whether a protestor has shown prejudice (injury) from an alleged procurement error seems to the Court indistinguishable from the § 1491(b)(1) standing requirement.  *See REV, LLC v. United States*, 91 F.4th 1156, 1163 (Fed. Cir. 2024) (explaining that prejudice is part of the showing necessary for standing under § 1491(b)(1)).  Accordingly, the Court will apply a statutory standing analysis, which, although not jurisdictional, may be performed at the outset before considering the merits.  *CACI*, 67 F.4th at 1152.

maintain a SAM registration "[in accordance with] FAR 52.204-7." *Id.* at 293.  As relevant here, FAR 52.204-7(b) requires that offerors "be registered in SAM when submitting an offer or quotation" and "continue to be registered until time of award[.]"  FAR 52.204-7(b)(1).

The parties agree that a lapse in IRTC's SAM registration occurred.  *See* ECF No. 28 at 20; ECF No. 30 at 2.  IRTC, however, disputes that the lapse makes it ineligible for award.  It argues that because this is not a solicitation for a FAR-based contract, FAR 52.204-7 is not applicable in the same way as in other FAR-based solicitations.  ECF No. 28 at 21–22.  Rather than imposing a stringent application of FAR 52.204-7, as would be required in a FAR Part 15 procurement, *id.* at 24–25, it contends AMC "is free to choose which FAR principles apply, and to what extent," *id.* at 25.  Although IRTC acknowledges that the FAR's SAM registration requirement is mandatory, *see id.* at 29; ECF No. 1 ¶ 22, it argues that without the full context of the administrative record, the Court must interpret what AMC intended by including this FAR provision.  Oral Arg. Tr. at 74:17–75:13, ECF No. 34; *see* ECF No. 28 at 22.  IRTC posits that AMC did not intend the full scope of FAR 52.204-7 to apply here because the eligibility requirement at issue in the Solicitation does not use language that "overtly" invokes its full scope as compared with language used for other FAR provisions.  ECF No. 28 at 25–26.  According to IRTC, other solicitation provisions also show that AMC intended FAR 52.204-7 to apply only at the time of award.  *Id.* at 23.  It highlights that each of the three eligibility requirements listed in Section M.1.4 of the Solicitation assesses the status of the offeror "immediately prior to award" and not at other times.  *Id.*

IRTC's attempt to construe the plain language of the Solicitation and of FAR 52.204-7 according to how it argues AMC would apply the provision fails.  When interpreting the language of a contract or a regulation, the Court first determines its plain meaning.  *See Banknote Corp. of*

*Am. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004) ("We begin with the plain language of the document."); *see also Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("It is well established that, when the statutory language is plain, we must enforce it according to its terms.") (citations omitted)).  If terms of a contract or regulation are undefined, "the Court gives them their ordinary meaning."  *Myriddian, LLC v. United States*, 165 Fed. Cl. 650, 656 (2023) (citing *Nicely v. United States*, 23 F.4th 1364, 1369 (Fed. Cir. 2022)).  Here, the language of the Solicitation is unequivocal.  It states that an eligible offeror "*must* be registered in [SAM] [*in accordance with*] FAR 52.204-7."  ECF No. 1-1 at 293 (emphasis added).  It further advises in no uncertain terms that where the Solicitation incorporates FAR solicitation provisions by reference, it does so "with the same force and effect as if they were given in full text."  *Id.* at 283; *see* ECF No. 30 at 3–4.  The mere placement of the SAM registration requirement in the Solicitation after two other eligibility requirements that apply at the time of award does not automatically impute the same constraint to the scope of the SAM registration FAR provision.  *See* ECF No. 28 at 23.

To be "in accordance with" FAR 52.204-7, pursuant to the plain language of the provision, an offeror must be registered in SAM continuously from the date of the offer submission to the time of award.  *See* FAR 52.204-7(b)(1).  Another judge of the court recently addressed the requirements of FAR 52.204-7 in *Myriddian*.  There, the court performed a plain meaning analysis of FAR 52.204-7(b)(1), finding that the language of the provision imposed a "compulsory constraint" and a "nondiscretionary duty" on offerors.  *Myriddian*, 165 Fed. Cl. at 655–56.  *Myriddian* also analyzed the meaning of the word "continue," noting that FAR 52.204-7 did not define this term.  *Id.*  Relying on the common dictionary definition, the court found that the term means "to maintain without interruption a condition, course, or action."  *Id.*  Accordingly, *Myriddian* held that FAR 52.204-7(b)(1) imposes a mandatory and continuous SAM registration

requirement on offerors. *Id.* (holding that "an offeror's SAM registration may not have an interruption or lapse under the plain meaning" of the provision). The Court agrees with *Myriddian*'s interpretation.

Notwithstanding the above, IRTC argues that the posture of this case distinguishes it from other cases, like *Myriddian*, where a SAM registration lapse was fatal to an offeror's eligibility for award. ECF No. 28 at 27. Specifically, it contends that a SAM lapse "should be amendable to curing during corrective action." *Id.* Although it provides no caselaw in support of this contention, IRTC makes several policy arguments as to why the Court should find a SAM registration lapse to be waivable. It argues that treating FAR 52.204-7 as an "irredeemable and fatal proposal flaw" makes it a "super-requirement above and beyond every other requirement" having to do with procurements. *Id.* at 28. In addition, IRTC argues that a SAM registration lapse is "an event with absolutely no prejudicial impact whatsoever" that does not place the Government at risk, does not provide the offeror a competitive advantage, nor does it cause a delay in the procurement process. *Id.* Lastly, it correctly notes that SAM registration lapses can be cured in FAR Part 14 procurements, in addition to "every other form of noncompliance or deficiency" in the procurement process. *Id.* According to IRTC, FAR 52.204-7 should not be "the lone exception to the rule." *Id.*

The Court is sympathetic to but unpersuaded by IRTC's arguments. The requirement for continuous SAM registration under FAR 52.204-7 is not affected by the procedural posture of this protest, especially when the full text of the provision is invoked as a mandatory eligibility requirement in the Solicitation. ECF No. 1-1 at 283, 293. Moreover, judges of this court have held that FAR 52.204-7 does not allow discretion "as to when to require SAM registration," as it once allowed under an earlier version of the provision. *Myriddian*, 165 Fed. Cl. at 657 (quoting

*G4S Secure Integration LLC v. United States*, No. 21-1817, 2022 WL 211023, at \*5 (Fed. Cl. Jan.

24, 2022)); *see also Thalle/Nicholson Joint Venture v. United States*, 164 Fed. Cl. 224, 233–34

(2023) (finding that allowing the SAM registration requirement to be curable would amount to an

unallowable waiver of the requirement).  Although the Court recognizes that the legal effect of

FAR 52.204-7 may be harsh, it is not at liberty to rewrite the regulation to accommodate IRTC's

policy preferences.  As the court aptly noted in *G4S Secure*, "[c]onsidering and weighing the[]

various interests is something best left to the FAR Council to resolve as a matter of policy rather

than to a court to address on a case-by-case basis." 2022 WL 211023, at \*7.  A SAM registration

lapse is an error that cannot be cured, and therefore IRTC is ineligible for award.[6]

Regardless of its own ineligibility, IRTC argues that it has standing to pursue this protest

because, accepted as true, the allegations contained in Counts III and IV of the Complaint

demonstrate that Taylor is ineligible for award as well.[7]  ECF No. 28 at 33–34.  And because there

are only two offerors competing under the Solicitation, it contends AMC would have to resolicit

---

[6] The Court is mindful that given the pre-award posture of this protest, the contracting officer has not (to the Court's knowledge) determined that IRTC's SAM registration lapse renders it ineligible.  The Federal Circuit in *CACI* held that the court should not make "statutory standing [determinations] de novo where the issue ha[s] not been addressed initially by the contracting officer," unless an exception to the *Chenery* doctrine applies. 67 F.4th at 1151.  Here, where there is no dispute that IRTC's SAM registration lapsed, in violation of the plain language of FAR 52.204-7(b)(1) and the Solicitation, and where, as a matter of law, AMC cannot exercise its discretion to waive the requirement nor can IRTC cure the violation, "the result is foreordained." *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (internal quotation marks omitted).  Remand is thus unnecessary.

[7] Under Count III of its Complaint, IRTC alleges "Taylor did not produce a 'successful' prototype . . . [and] should never have been permitted to compete" for the follow-on production contract.  ECF No. 1 ¶ 94.  Under Count IV, IRTC alleges that the scope of AMC's corrective action does not include a deficiency review of Taylor's "price proposal and other aspects . . . relat[ing] to eligibility or technical compliance." *Id.* ¶ 103.  This alleged oversight caused AMC to miss what IRTC contends are deficiencies in Taylor's "prototype solution parts list" that would demonstrate that Taylor did not successfully complete the prototype. *Id.* ¶ 104.

the follow-on production contract if both offerors were deemed ineligible for award. *Id.* at 34. In this hypothetical scenario, IRTC anticipates it would become eligible to submit a proposal to an amended solicitation. *Id.*

Plaintiff relies upon *Impresa Construzioni Geom. Domenico Garufi v. United States*, where the elimination of both the awardee and the disappointed bidder resulted in a re-solicitation of the contract. 238 F.3d 1324, 1334 (Fed. Cir. 2001). In *Impresa*, a bidder that was eliminated from the competition protested the contracting officer's responsibility determination for the awardee. *Id.* at 1333–34. The Court of Federal Claims determined that the plaintiff in *Impresa* "had been properly excluded" and as such "lacked standing to challenge the award . . . because [the plaintiff] was not an 'interested party.'" *Id.* at 1330. On appeal, the Government conceded that if the disappointed bidder's protest were granted, "the government would be obligated to rebid the contract, and appellant could compete for the contract once again." *Id.* at 1334. Accordingly, *Impresa* found that the disappointed bidder had a substantial chance of receiving the award, and thus had standing under those circumstances. *Id.* The Federal Circuit has since clarified its holding in *Impresa*, stating that when the Government is "obligated to rebid the contract" after a successful protest, which allows the protestor to compete again, the protestor meets the "'substantial chance' standard and ha[s] standing." *Labatt Food Serv.*, 577 F.3d at 1379. This, however, depends upon the "unsuccessful bidder" alleging "harmful error" by the Government. *Id.*

The Federal Circuit's reasoning in *Impresa* and *Labatt* does not apply here. Although IRTC has alleged harmful error, the present protest involves a solicitation for a follow-on production contract under AMC's OT authority. *See* ECF No. 1 at 1; ECF No. 1-1 at 111. Nothing in 10 U.S.C. §§ 4021 and 4022 obligates the agency, when it chooses to use OT authority, to re-issue the solicitation if neither offeror is eligible. 10 U.S.C. §§ 4021(a), 4022(f)(2); *see* ECF No.

30 at 6.  Moreover, the Solicitation expressly stated that AMC "reserve[d] the right to make no award(s)[.]"  ECF No. 1-1 at 111.  At oral argument, the Government asserted that "only if the Army is obligated to cancel and recompete," could IRTC re-start "a new timeline against which the SAM registration is measured."  ECF No. 34 at 27:17–18, 20–21.  The Court agrees.

Additionally, the ineligibility argument IRTC raises relates to whether Taylor successfully completed the OT prototype phase.  ECF No. 28 at 33 (alleging in Count III that Taylor's prototype "was in violation of basic technical requirements established in the Prototype OTA RFP" and should not have been deemed successful), 34 (alleging in Count IV that AMC's failure "to include a general assessment of deficiencies as part of corrective action" missed deficiencies that would have demonstrated Taylor did not successfully complete its prototype).  The prototype solicitation in this matter is closed, and the present protest of the follow-on production solicitation cannot be used to challenge any alleged deficiencies in a proposal or proposal evaluation relating to a separate solicitation.  *See Griffy's Landscape Maint. LLC v. United States*, 51 Fed. Cl. 667, 671 (2001) ("[A]n attack upon a new solicitation or upon any other aspect of the administration of the previous contract, must stand on its own.").  Therefore, allegations pertaining to alleged errors in the completed prototype phase, which is not directly challenged in this case, cannot create standing for IRTC to protest the follow-on production contract.  Accordingly, the Court grants the Government's and Taylor's Motions to Dismiss pursuant to RCFC 12(b)(6) because IRTC is not an interested party, and thus does not have standing, due to a lapse in its required SAM registration.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that it has jurisdiction pursuant to 28 U.S.C. § 1491(b)(1) to review this protest.  However, IRTC's lapse in its SAM registration violated a mandatory eligibility requirement of the Solicitation for continuous SAM registration, per FAR

52.204-7.  IRTC's resulting ineligibility for award deprives it of standing to bring this protest.

Therefore, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion to Dismiss

(ECF No. 26) and Taylor's Motion to Dismiss (ECF No. 27).  The Clerk is directed to enter

judgment accordingly.

> **SO ORDERED**.


Dated: July 1, 2024                              */s/ Kathryn C. Davis*_____
                                                 KATHRYN C. DAVIS
                                                 Judge